CARLOS HURTADO LATRE, ROSA RIVERA y la SOCIEDAD LEGAL DE GANANCIALES compuesta por ambos, demandantes y recurrentes, *v.* JOSEFINA OSUNA y DR. RAMÓN FRESSE, demandados y recurridos.

*Número:* RE-91-012   *Resuelto:* 30 de junio de 1995

*Pedro Gavillán Morales*, abogado de los recurrentes; *Jorge J. López López*, de *Irizarry & Otero*, abogado de los recurridos.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

I

El 9 de abril de 1989 el demandante recurrente Carlos Hurtado Latre, empleado de Lederle Parenterals, Inc. (en adelante Lederle), se reportó al Fondo del Seguro del Estado alegando que había sufrido un accidente de trabajo. El 3 de abril de 1990 el Fondo del Seguro del Estado emitió una resolución mediante la cual resolvió que, efectivamente, el demandante había sufrido un accidente del trabajo, brindándole los beneficios dispuestos en la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 y ss. El 2 de mayo de 1990 el demandante, su esposa y la sociedad de gananciales constituida por ellos presentaron la demanda de epígrafe y alegaron, en síntesis, que debido a la negligencia de la codemandada Josefina Osuna, Direc-

tora de Seguridad Industrial de la planta, el demandante estuvo expuesto a múltiples agentes citotóxicos y antibióticos, los cuales le han producido su condición actual de trombocitopenia adquirida. Alegaron, además, que debido a la negligencia del codemandado, Dr. José Ramón Fresse, médico seleccionado por el patrono, el demandante no recibió tratamiento médico oportuno.

El 14 de septiembre de 1990 la codemandada Josefina Osuna presentó una solicitud de sentencia sumaria, alegando que la inmunidad que la Ley de Compensaciones por Accidentes del Trabajo concede al patrono se extiende además a sus oficiales y empleados. El codemandado, Dr. José Ramón Fresse, presentó una moción para solicitar adherirse a la moción de sentencia sumaria de la codemandada Josefina Osuna.

El 9 de noviembre de 1990 el tribunal de instancia dictó sentencia sumaria que desestimaba la demanda en todos sus aspectos.

Inconforme con la sentencia dictada, la parte demandante interpuso un recurso de revisión que declaramos no ha lugar mediante resolución emitida el 8 de febrero de 1991. No obstante, vista la moción de reconsideración, le concedimos al codemandado recurrido, Dr. José Ramón Fresse, el término de veinte (20) días para que mostrara causa por la cual no debíamos dejar sin efecto nuestra Resolución de 8 de febrero de 1991 y dictar sentencia para revocar la sentencia sumaria recurrida.(¹) El Dr. José Ramón Fresse ha comparecido. Estamos en posición de decidir y así procedemos a hacerlo.

---

(¹) Nuestra Orden de mostrar causa de 15 de marzo de 1991, por error, fue dirigida a la parte demandante recurrente. Dicho error fue corregido mediante resolución dictada el 12 de abril de 1991.

## II

La Ley de Compensaciones por Accidentes del Trabajo provee un amplio esquema para la concesión de distintos tipos de beneficios a obreros que sufren accidentes o lesiones en el curso de su empleo. En general, la ley provee tres (3) tipos de beneficios a los trabajadores lesionados: (1) tratamiento y asistencia médica, incluso medicinas y servicios de hospital cuando fuese necesario; (2) compensación, en forma de dietas, durante el período de recuperación, mientras el obrero continúe temporalmente incapacitado para trabajar, y (3) compensación adicional por cualquier incapacidad parcial o total permanente que resulte. *Ríos Rivera v. Comisión Industrial*, 108 D.P.R. 808, 811 (1979).

La ley establece que los beneficios antes mencionados se extienden a los obreros "que sufran lesiones o se inutilicen, o que pierdan la vida por accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo y que ocurran en el curso de éste, y como consecuencia del mismo o por enfermedades o muertes derivadas de la ocupación ...". 11 L.P.R.A. sec. 2.

De acuerdo con esta disposición, los requisitos para que un accidente sea compensable son: (1) que provenga de cualquier acto o función del obrero; (2) que sea inherente a su trabajo o empleo, y (3) que ocurra en el curso de éste. *Admor., F.S.E. v. Comisión Industrial*, 101 D.P.R. 56, 58 (1973); *Vélez, Admor. v. Comisión Industrial*, 91 D.P.R. 480, 484 (1964).

Conforme al esquema adoptado por la ley, los obreros tienen derecho a percibir los beneficios del estatuto, independientemente de que pueda demostrarse que la lesión sobrevino por la negligencia de alguna persona. *Santiago Hodge v. Parke Davis Co.*, 126 D.P.R. 1 (1990); *Cortijo Walker v. Fuentes Fluviales*, 91 D.P.R. 574, 580 (1964). A cambio de esto, los patronos generalmente gozan

de inmunidad en torno a acciones por daños y perjuicios presentados por el obrero afectado con relación a su lesión. 11 L.P.R.A. sec. 21. "Este quid pro quo es el eje central del esquema de seguro compulsorio; es lo que lo hace viable." *Pacheco Pietri y otros v. E.L.A. y otros*, 133 D.P.R. 907, 915 (1993). Véase *Ruiz Díaz v. Vargas Reyes*, 109 D.P.R. 761 (1980).

## III

■ Como mencionáramos anteriormente, en el presente caso la parte demandante instó una acción de daños y perjuicios contra una coempleada —la Directora de Seguridad de la planta para la cual trabajaba el obrero demandante— por su negligencia en cuanto a las medidas de seguridad aplicables a la víctima. La controversia es similar a la que se planteó en *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 D.P.R. 115 (1992). Allí expresamos que la obligación legal de proveer un lugar seguro de empleo recae en el patrono. Éste tiene un deber indelegable ("no delegable") de proveer un lugar de trabajo libre de riesgos para sus empleados. El término "no delegable" significa que hay algunas obligaciones que un patrono debe a sus empleados las cuales impiden que el patrono pueda librarse de responsabilidad frente al obrero lesionado, delegando esa función en otros coempleados. Señalamos, además, lo siguiente:

> Dentro de la estructura corporativa, el patrono descarga su obligación de proveer un lugar seguro de empleo a través de sus agentes, empleados u oficiales corporativos. De tal forma, un obrero lesionado siempre encontrará un oficial que está envuelto en decisiones en torno a la seguridad de los empleados, o a un supervisor que está encargado de implantar las normas de seguridad de la compañía. Determinamos, por razones de política pública, que cuando la alegada negligencia del supervisor u oficial corporativo se deriva del incumplimiento de esta obligación, el obrero lesionado no puede demandar al coempleado; el

deber de supervisión adecuada es una obligación del empleado a su patrono y no a su compañero de trabajo. Mientras el empleado u oficial está descargando las responsabilidades generales de su puesto, cualquier violación a este deber es imputable exclusivamente al patrono. En tales casos, el empleado lesionado solamente puede recurrir al Fondo del Seguro del Estado. *Rivera et al. v. Superior Pkg., Inc. et al.*, supra, págs. 141–142.

En el caso citado resolvimos que bajo el esquema de la Ley de Compensaciones por Accidentes del Trabajo, a un coempleado —ya sea oficial, accionista o supervisor— le cobija la inmunidad patronal cuando la alegada negligencia del coempleado consiste en alegadamente violar el deber indelegable ("no delegable") de la corporación de proveer un lugar seguro de empleo. La responsabilidad de un coempleado en este caso está limitada a sus deberes u obligaciones personales como ciudadano de no causar daño a otras personas, conforme al Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, y no en el descargo de los deberes generales de su puesto o cargo oficial que ocupa en el negocio del patrono.

En relación con la codemandada Josefina Osuna no hay controversia real respecto a los hechos del caso. En vista de ello, y a la luz de la norma establecida en *Rivera et al. v. Superior Pkg., Inc. et al.*, supra, actuó correctamente el tribunal de instancia al desestimar la reclamación presentada en contra de dicha codemandada.

## IV

Distinta es la situación, sin embargo, en cuanto al codemandado Dr. José Ramón Fresse. Veamos.

En *Flores Román v. Ramos González*, 127 D.P.R. 601 (1990), confrontamos una controversia análoga a la del presente caso bajo las disposiciones del Art. 41.080 de la Ley Núm. 55 de 18 de julio de 1978 (26 L.P.R.A. sec.

4108).(²) Allí expresamos que para determinar la relación contractual entre una agencia o instrumentalidad del Estado y los médicos, *hay que examinar la forma, el modo y las condiciones en que se presten los servicios, con énfasis particular en si los deberes y las responsabilidades requeridas corresponden a un puesto que requiera el empleo de una persona en forma regular a tiempo completo o parcial.* Y añadimos que "[e]n el caso particular de los médicos se debe considerar *la forma de pago* por los servicios rendidos; *la inversión en que se incurrió* en equipo científico y en facilidades o el grado de dependencia en el equipo suministrado por el principal; *si se le requiere un seguro de responsabilidad profesional, y el grado de juicio independiente que se requiera al suministrar sus servicios".* (Énfasis suplido.) *Flores Román v. Ramos González,* supra, pág. 609.

Aunque en el caso ahora ante nuestra consideración no se trata de la inmunidad que la Ley Núm. 55, *supra,* concede a los médicos que ejercen su profesión como empleados del Estado Libre Asociado de Puerto Rico, sino de la inmunidad patronal de la Ley de Compensaciones por Accidentes del Trabajo que invoca el codemandado recurrido, Dr. José Ramón Fresse, como empleado·del mismo patrono del obrero reclamante, no hay duda de que al hacer la determinación que corresponda, tenemos que aplicar los mismos criterios que esbozamos en el citado caso de *Flores Román v. Ramos González.* Al tratar de así hacerlo, encontramos que la evidencia presentada por el doctor Fresse en apoyo de su solicitud de sentencia sumaria es insuficiente para hacer cualquier clase de determinación a esos efectos. Dicha evidencia consistió en la propia declaración jurada del doctor Fresse, quien, en lo pertinente, se limitó a manifestar lo siguiente:

---

(²) Mediante esta disposición la Asamblea Legislativa confirió inmunidad a los médicos por los daños causados por la negligencia en el desempeño de su profesión mientras actúen como empleados del E.L.A., sus dependencias, instrumentalidades y municipios.

2. Que la asistencia médica que ofreciera al Sr. Carlos Hurtado Latre en Lederle Parenteral, Inc., fue ofrecida mientras yo actuaba como empleado de Lederle y en mi[s] funciones oficiales como tal. Revisión, *Exhibit* 8, pág. 8.

Tal afirmación, sin más, no es otra cosa que una mera conclusión sin dato alguno en que apoyarse. No se ofrece información alguna respecto a las condiciones del empleo como serían el monto del salario, la forma del pago, el lugar donde se prestan los servicios, el horario de los servicios, el título del equipo científico o profesional que utiliza en su prestación, si se le requiere seguro de responsabilidad profesional y el grado de autonomía y juicio profesional en la prestación de tales servicios.

## V

En un sinnúmero de ocasiones hemos establecido que el propósito principal de la moción de sentencia sumaria, según dispone la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, es propiciar la resolución justa, rápida y económica de litigios que no presentan controversias genuinas de hechos materiales, por lo tanto, no ameritan la celebración de un juicio en su fondo. *Worldwide Food Dis., Inc. v. Colón et al.*, 133 D.P.R. 827 (1993); *González v. Alicea, Dir. Soc. Asist. Legal*, 132 D.P.R. 638 (1993); *Rivera et al. v. Superior Pkg., Inc. et al.*, supra; *Tello, Rivera v. Eastern Airlines*, 119 D.P.R. 83 (1987).

Ahora bien, la parte que solicita la sentencia sumaria en un pleito tiene la obligación de demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que a la luz del derecho sustantivo determinaría una sentencia a su favor como cuestión de ley. *Rivera et al. v. Superior Pkg., Inc. et al.*, supra; *Tello, Rivera v. Eastern Airlines*, supra.

Luego de un análisis cuidadoso de los documentos obrantes en autos, concluimos que el tribunal de instancia

no tuvo ante sí, al resolver la moción de sentencia sumaria, todos los hechos esenciales a los fines de poder hacer una determinación respecto a la relación contractual existente entre el codemandado, Dr. José Ramón Fresse, y el patrono, Lederle.

Por todo lo antes expuesto, *se revocará aquella parte de la sentencia que desestimó la reclamación presentada en contra del codemandado Dr. José Ramón Fresse y se devolverá el caso al foro de instancia para que continúen los procedimientos en forma compatible con lo aquí resuelto.*

El Juez Asociado Señor Negrón García se inhibió. Los Jueces Asociados Señores Rebollo López y Fuster Berlingeri no intervinieron.